PER CURIAM.
Pursuant to rule 10~2.1(a) of the Rules Regulating the Florida Bar, this Court has adopted simplified forms for Court-approved use by nonlawyers assisting third parties. In 1997, the Florida Bar Standing Committee on Simplified Forms formulated revisions to the simplified forms for Residential Eviction Summons; Final Judgment — Damages; and Residential Lease — Single Family Home and Duplex. The official notice of the Bar’s intent to file a petition to revise these forms and the proposed revisions were first published in the December 15, 1997, edition of The Florida Bar News as required by rule 1-12.1(g) of the Rules Regulating The Florida Bar. In 1998, we considered comments submitted by interested parties, including the Housing Workgroup of Florida Legal Services, Inc., which noted that several sections of the residential lease form contained language conflicting with statutory requirements.
The Housing Workgroup suggested deleting the lease form entirely from the forms package because the standardized lease form potentially encroached upon the rights of leasing parties to privately negotiate specific terms of leases. The chairman of The Florida Bar Standing Committee on Simplified Forms responded that the Committee did not oppose the suggestion that the Residential Lease for Single Family Homes and Duplexes be removed from the forms package. After considering the petition and the comments submitted, this Court approved the revised forms with changes to the Eviction Summons form and the form for Final Judgment-Damages. Florida Bar re Revisions to Simplified Forms, 773 So.2d 1062 (Fla.1998). We deleted entirely the form entitled Residential Lease for Single Family Home and Duplex. Id.
It has come to our attention that the Board of Governors of The Florida Bar has concluded that a Court-approved Residential Lease form serves the public by allowing nonlawyers to assist parties in completing one-year residential leases. Accordingly, after ordering two subsequent revisions, considering comments, and hearing oral argument, we approve The Florida Bar’s third revision of its simplified form entitled Residential Lease for Single Family Home and Duplex, which was published in The Florida Bar News on March 1, 2000. We also continue to approve the Residential Lease for Single Family Home and Duplex that this Court approved in Florida Bar re Advisory Opinion-Nonlawyer Preparation of Resi *612 dential Leases Up to One Year in Duration, 602 So.2d 914, 915 (Fla.1992). We attach the approved lease forms in the appendix to this opinion. We express no opinion as to whether these approved lease forms comport with current law.
In addition to the forms, The Florida Bar has prepared instructions to accompany the forms. While we authorize the publication of the instructions, we do not express an opinion on their legal correctness. Because local procedures may vary from circuit to circuit, the chief judge of each circuit is authorized to prepare supplemental directions for using forms. All such directions shall be filed with the clerks of the court in the circuits and with the clerk of this Court.
Accordingly, and upon consideration of the proposed revisions, we adopt same and approve the attached lease forms, effective upon the release of this opinion.
It is so ordered.
WELLS, C.J., and SHAW, HARDING, ANSTEAD, PARIENTE, LEWIS and QUINCE, JJ., concur.
APPENDIX
Residential Lease for Single Family Home and Duplex
(FOR A TERM NOT TO EXCEED ONE YEAR)
A BOX (□) OR A BLANK SPACE (_) INDICATES A PROVISION WHERE A CHOICE OR DECISION MUST BE MADE BY THE PARTIES.
THE LEASE IMPOSES IMPORTANT LEGAL OBLIGATIONS. MANY RIGHTS AND RESPONSIBILITIES OF THE PARTIES ARE GOVERNED BY CHAPTER 83, PART II, RESIDENTIAL LANDLORD AND TENANT ACT, FLORIDA STATUTES. UPON REQUEST, THE LANDLORD SHALL PROVIDE A COPY OF THE RESIDENTIAL LANDLORD AND TENANT ACT TO THE TENANT(S).
1. PARTIES. This is a lease (“the Lease”) between_(name & address of owner of the property)_(“Landlord”) and_(name(s) of person(s) to whom the property is leased).__ (“Tenant.”)
2. PROPERTY RENTED. Landlord leases to Tenant the land and buildings located at _(street address)_, Florida_(zip code) together with the following furniture and appliances [List all furniture and appliances. If none, write “none.”] (In the Lease, the property leased, including furniture and appliances, if any, is called “the Premises”): -
The Premises shall be occupied only by the Tenant and the following persons:
3. TERM. This is a lease for a term, not to exceed twelve months, beginning on _(month, day, year) and ending_(month, day, year) (the “Lease Term”).
4. RENT PAYMENTS, TAXES AND CHARGES.
Tenant shall pay total rent in the amount of $__ (excluding taxes) for the Lease Term. The rent shall be payable by Tenant in advance
□ in installments. If in installments, rent shall be payable
□ monthly, on the _ day of each month. (If left blank, on the first day of each month.)
□ weekly, on the_ day of each week. (If left blank, on Monday of each week.) in the amount of $_per installment.
□ in full on_(date) in the amount of $- Tenant shall also be obligated to pay taxes on the rent when applicable in the amount of $_□ with each rent installment □ with the rent for the full term of the Lease. Landlord will notify Tenant if the amount of the tax changes.
*613 Payment Summary
□ If rent is paid in installments, the total payment per installment including taxes shall be in the amount of $-
□ If rent is paid in full, the total payment including taxes shall be in the amount of $--
All rent payments shall be payable to_(name) at_(address). (If left blank, to Landlord at Landlord’s address).
□ If the tenancy starts on a day other than the first day of the month or week as designated above, the rent shall be prorated from-(date) through _(date) in the amount of $_and shall be due on_(date). (If rent paid monthly, prorate on a 30 day month.)
Tenant shall make rent payments required under the Lease by (choose all applicable) □ cash, □ personal check, □ money order, □ cashier’s check, or □ other _(specify). If payment is accepted by any means other than cash, payment is not considered made until the other instrument is collected.
If Tenant makes a rent payment with a worthless check, Landlord can require Tenant □ to pay all future payments by □ money order, cashier’s check, or official bank check or □ cash or other (specify)_, and □ to pay bad cheek fees in the amount of $_(not to exceed the amount prescribed by Florida Statutes section 68.065).
5.MONEY DUE PRIOR TO OCCUPANCY. Tenant shall pay the sum of $_in accordance with this Paragraph prior to occupying the Premises. Tenant shall not be entitled to move in or to keys to the Premises until all money due prior to occupancy has been paid. If no date is specified below, then funds shall be due prior to tenant occupancy. Any funds designated in this paragraph due after occupancy, shall be paid accordingly. Any funds due under this paragraph shall be payable to Landlord at Landlord’s address or to
(name)
at
(address)
First □ month’s □ week’s rent plus applicable taxes $_ due
Prorated rent plus applicable taxes $_ due Advance rent for □ month □ week of_plus
applicable taxes $_ due
Last □ month’s □ week’s rent plus applicable taxes $_ due
Security deposit $_ due
Additional security deposit $_ due
Security deposit for homeowner’s association $_ due
Other_ $_ due
Other_ $_ due
6. LATE FEES. (Complete if applicable) In addition to rent, Tenant shall pay a late charge in the amount of $_for each rent payment made_days after the day it is due (if left blank, 5 days if rent is paid monthly, 1 day if rent is paid weekly).
7. PETS. Tenant □ may □ may not keep pets or animals on the Premises. If Tenant may keep pets, the pets described in this Paragraph are permitted on the Premises.
(Specify number of pets, type(s), breed, maximum adult weight of pets.)
8.NOTICES.
All notices must be sent to □ Landlord_(name) at_ □ Landlord’s Agent_(name) at . is Landlord’s Agent, .(address) _(address)
*614 unless Landlord gives Tenant written notice of a change. All notices -of such names and addresses or changes thereto shall be delivered to the Tenant’s residence or, if specified in writing by the Tenant, to any other address. All notices to the Landlord or the Landlord’s Agent (whichever is specified above) shall be given by U.S. mail or by hand delivery.
Any notice to Tenant shall be given by U.S. mail or delivered to Tenant at the Premises. If Tenant is absent from the Premises, a notice to Tenant may be given by leaving a copy of the notice at Premises.
9. UTILITIES. Tenant shall pay for all utilities services during the Lease Term and connection charges and deposits for activating existing utility connections to the Premises except for_), that Landlord agrees to provide at Landlord’s expense.
10. MAINTENANCE.
Landlord shall be responsible for compliance with Section 83.51, Florida Statutes, and shall be responsible for maintenance and repair of the Premises, unless otherwise stated below:
(Fill in each blank space with “Landlord” for Landlord or “Tenant” for Tenant, if left blank, Landlord will be responsible for the item):
_roofs _windows _screens _steps
_doors . — . floors _porches _exterior walls
_foundations -plumbing _structural components
_heating _hot water _electrical system _running water _cooling _locks and keys _smoke detection devices
_garbage removal/ outside receptacles
_extermination of rats, mice, roaches, ants and bedbugs
_extermination of wood-destroying organisms
_lawn/shrubbery _pool/spa/hot tub
_water treatment _filters (specify) _
_ceilings _interior walls
Other (specify)_
Tenant shall notify. _(name) at. -(address) and. number) of maintenance and repair requests. -(telephone
11.ASSIGNMENT. Tenant may may not assign the lease or sublease all or any part of the Premises without first obtaining the Landlord’s written approval and consent to the assignment or sublease.
12. KEYS AND LOCKS. Landlord shall furnish Tenant _# of sets of keys to the dwelling
_# of mail box keys
___ # of garage door openers
If there is a homeowner’s association, Tenant will be provided with the following to access the association’s common areas/facilities:
___ # of keys to_:-
_# of remote controls to -
_# of electronic cards to_:-
_other (specify) to-At end of Lease Term, all items specified in this Paragraph shall be returned to _(name) at_(address). (If left blank, Landlord at Landlord’s address).
13. LEAD-BASED PAINT. Check and complete if the dwelling was built before January 1, 1978.
Lead Warning Statement
Housing built before 1978 may contain lead-based paint. Lead from paint, paint chips, and dust can pose health hazards if not managed properly. Lead exposure is especially harmful to young children and pregnant women. Before renting pre-1978 housing, lessors must disclose the presence of known lead-based paint and/or lead-based paint hazards in the dwelling. Lessees must also receive a federally approved pamphlet on lead poisoning prevention. Lessor’s Disclosure (initial)
_(a) Presence of lead-based paint or lead-based paint hazards (check (i) or (ii) below): (i)_Known lead-based paint and/or lead-based paint hazards are present in the housing (explain).
*615 (ii)_Lessor has no knowledge of lead-based paint and/or lead-based paint hazards in the housing.
_(b) Records and reports available to the lessor (check (i) or (ii) below): (i)_Lessor has provided the lessee with all available records and reports pertaining to lead-based paint and/or lead-based paint hazards in the housing (list documents below).
(ii)_Lessor has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.
Lessee’s Acknowledgment (initial)
_(c) Lessee has received copies of all information listed above.
_(d) Lessee has received the pamphlet Protect Your Family From Lead in Your Home.
Agent’s Acknowledgment (initial)
_(e) Agent has informed the lessor of the lessor’s obligations under 42 U.S.C. 4852d and is aware of his/her responsibility to ensure compliance.
Certification of Accuracy
The following parties have reviewed the information above and certify, to the best of their knowledge, that the information provided by the signatory is true and accurate.
Lessor Date Lessor Date
Lessee Date Lessee Date
Agent Date Agent Date
14. MILITARY/U.S. CIVIL SERVICE. □ Check if applicable.
In the event Tenant, who is in the Military/U.S. Civil Service, should receive government orders for permanent change of duty station requiring Tenant to relocate away from the Premises, then Tenant may terminate the Lease without further liability by giving Landlord 30 days advance written notice and a copy of the transfer order.
15. LANDLORD’S ACCESS TO THE PREMISES. As provided in Chapter 83, Part II, Residential Landlord and Tenant Act, Florida Statutes, Landlord or Landlord’s Agent may enter the Premises in the following circumstances:
A. At any time for the protection or preservation of the Premises.
B. After reasonable notice to Tenant at reasonable times for the purpose of repairing the Premises.
C. To inspect the Premises; make necessary or agreed-upon repairs, decorations, alterations, or improvements; supply agreed services; or exhibit the Premises to prospective or actual purchasers, mortgagees, tenants, workers, or contractors under any of the following circumstances:
1. with Tenant’s consent;
2. in case of emergency;
3. when Tenant unreasonably withholds consent; or
4. if Tenant is absent from the Premises for a period of at least one-half a Rental Installment period. (If the rent is current and Tenant notifies Landlord of an intended absence, then Landlord may enter only with Tenant’s consent or for the protection or preservation of the Premises.)
16. HOMEOWNER’S ASSOCIATION. If Tenant must be approved by a homeowner’s association (“association”), Landlord and Tenant agree that the Lease is contingent upon receiving approval from the association. Any application fee required by an association shall be paid by □ Landlord □ Tenant and is □ refundable □ nonrefundable. If such approval is not obtained prior to commencement of Lease Term, Tenant shall receive return of deposits specified in Paragraph 5, if made, and the obligations of the parties under the Lease shall terminate. Tenant agrees to use due diligence in applying for association approval, to comply *616 with the requirements for obtaining approval and agrees to pay any fee required by the association for procuring approval. □ Landlord □ Tenant shall pay the security deposit required by the association, if applicable.
17. USE OF THE PREMISES. Tenant shall use the Premises for residential purposes. Tenant shall have exclusive use and right of possession to the dwelling. The Premises shall be used so as to comply with all state, county, municipal laws and ordinances, and all covenants and restrictions affecting the Premises and all rules and regulations of homeowners’ associations affecting the Premises. Tenant may not paint or make any alterations or improvements to the Premises without first obtaining the Landlord’s written consent to the alteration or improvement. Any improvements or alterations to the Premises made by the Tenant shall become Landlord’s property. Tenant agrees not to use, keep, or store on the Premises any dangerous, explosive, toxic material which would increase the probability of fire or which would increase the cost of insuring the Premises.
18. RISK OF LOSS/INSURANCE.
A. Landlord and Tenant shall each be responsible for loss, damage, or injury caused by its own negligence or willful conduct.
B. Tenant should carry insurance covering Tenant’s personal property and Tenant’s liability insurance.
19. DEFAULTS/REMEDIES. Should a party to the Lease fail to fulfill their responsibilities under the Lease or need to determine whether there has been a default of the Lease, refer to Part II, Chapter 83, entitled Florida Residential Landlord and Tenant Act which contains information on same, and/or remedies available to the parties.
20. SUBORDINATION. The Lease is subordinate to the lien of any mortgage encumbering the fee title to the Premises from time to time.
21. LIENS. Tenant shall not have the right or authority to encumber the Premises or to permit any person to claim or assert any lien for the improvement or repair of the Premises made by Tenant. Tenant shall notify all parties performing work on the Premises at Tenant’s request that the Lease does not allow any liens to attach to Landlord’s interest.
22. RENEWAL/EXTENSION. The Lease can be renewed or extended only by a written agreement signed by both Landlord and Tenant, but the term of a renewal or extension together with the original Lease Term may not exceed one year. A new lease is required for each year.
23. TENANT’S PERSONAL PROPERTY. BY SIGNING THIS RENTAL AGREEMENT, TENANT AGREES THAT UPON SURRENDER OR ABANDONMENT, AS DEFINED BY THE FLORIDA STATUTES, LANDLORD SHALL NOT BE LIABLE OR RESPONSIBLE FOR STORAGE OR DISPOSITION OF TENANT’S PERSONAL PROPERTY.
24. TENANT’S TELEPHONE NUMBER. Tenant shall within 5 business days of obtaining telephone services at the Premises, send written notice to Landlord of Tenant’s telephone numbers at the Premises.
25. ATTORNEY’S FEES. In any lawsuit brought to enforce the Lease or under applicable law, the party who wins may recover its reasonable court costs and attorney’s fees from the party who loses.
26. MISCELLANEOUS.
A. Time is of the essence of the Lease.
B. The Lease shall be binding upon and for the benefit of the heirs, personal representatives, successors, and permitted assigns of Landlord and Tenant, subject to the requirements specifically mentioned in the Lease. Whenever used, the singular number shall include the plural or singular and the use of any gender shall include all appropriate genders.
*617 C. The agreements contained in the Lease set forth the complete understanding of the parties and may not be changed or terminated orally.
D. No agreement to accept surrender of the Premises from Tenant will be valid unless in writing and signed by Landlord.
E. All questions concerning the meaning, execution, construction, effect, validity, and enforcement of the Lease shall be determined pursuant to the laws of Florida.
F. A facsimile copy of the Lease and any signatures hereon shall be considered for all purposes originals.
G. As required by law, Landlord makes the following disclosure: “RADON GAS.” Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your county health department.
27. BROKERS’ COMMISSION. Check and complete if applicable. The brokerage companies named below will be paid the commission set forth in this Paragraph by Landlord Tenant for procuring a tenant for this transaction.
Real Estate Licensee Real Estate Licensee
Real Estate Brokerage Company Real Estate Brokerage Company
Commission Commission
28. EXECUTION.
Executed by Landlord
Landlord’s Signature Date
Landlord’s Signature Date
Executed by Tenant
Tenant’s Signature Date
Tenant’s Signature Date
This form was completed with the assistance of:
Name of Individual:
Name of Business:
Address:
Telephone Number:
RESIDENTIAL LEASE FOR SINGLE FAMILY HOME AND DUPLEX (FOR A TERM NOT TO EXCEED ONE YEAR)
(Not To Be Used For Commercial, Agricultural, or Other Residential Property)
WARNING: IT IS VERY IMPORTANT TO READ ALL OF THE LEASE CAREFULLY. THE LEASE IMPOSES IMPORTANT LEGAL OBLIGATIONS.
AN ASTERISK (*) OR A BLANK SPACE (_) INDICATES A PROVISION WHERE A CHOICE OR A DECISION MUST BE MADE BY THE PARTIES.
*618 NO CHANGES OR ADDITIONS TO THIS FORM MAY BE MADE UNLESS A LAWYER IS CONSULTED.
I. TERM AND PARTIES. This is a lease (“the Lease”) for a period of-[number] months (the “Lease Term”), beginning -[month, day, year] and ending _[month, day, year], between _[name of owner of property] and _name(s) of person(s) to whom the property is leased]
(In the Lease, the owner, whether one or more, of the property is called “Landlord.” All persons to whom the property is leased are called “Tenant.”)
II. PROPERTY RENTED. Landlord leases to Tenant the land and building located at _ [street address], _, Florida _ [zip code] together with the following furniture and appliances: -
[List all furniture and appliances. If none, write “none.”] (In the Lease the property leased, including furniture and appliances, if any, is called “the Premises.”)
III. RENT PAYMENTS AND CHARGES. Tenant shall pay rent for the Premises in installments of $_each on the_day of each-[month, week] (A “Rental Installment Period,” as used in the Lease, shall be a month if rent is paid monthly, and a week if rent is paid weekly.) Tenant shall pay with each rent payment all taxes imposed on the rent by taxing authorities. The amount of taxes payable on the beginning date of the Lease is $_for each installment. The amount of each installment of rent plus taxes (“the Lease Payment”), as of the date the Lease begins, is $_Landlord will notify Tenant if the amount of the tax changes. Tenant shall pay the rent and all other charges required to be paid under the Lease by cash, valid check, or money order. Landlord may appoint an agent to collect the Lease Payment and to perform Landlord’s obligations.
⅜ The Lease Payments must be paid in advance/in arrears (circle one) beginning __[date].
Approved for use under rule 101.1(b) of the Rules Regulating The Florida Bar
IV. DEPOSITS, ADVANCE RENT, AND LATE CHARGES. In addition to the Lease Payments described above, Tenant shall pay the following: (check only those items that apply)
_ a security deposit of $_to be paid upon signing the Lease.
_ advance rent in the amount of $_for the Rental Installment Periods of _to be paid upon signing the Lease.
_ a pet deposit in the amount of $_to be paid upon signing the Lease.
_ a late charge in the amount of $_for each Lease Payment made more than _number of days after the date it is due.
_ a bad check fee in the amount of $_(not to exceed $20.00, or 5% of the Lease Payment, whichever is greater) if Tenant makes any Lease Payment with a bad check.
If Tenant makes any Lease Payment with a bad check, Landlord can require Tenant to pay all future Lease Payments in cash or by money order.
V. SECURITY DEPOSITS AND ADVANCE RENT. If Tenant has paid a security deposit or advance rent the following provisions apply:
A. Landlord shall hold the money in a separate interest-bearing or non-interest-bearing account in a Florida banking institution for the benefit of Tenant. If Landlord deposits the money in an interest-bearing account, Landlord must pay Tenant interest of at least 75% of the annualized average interest paid by the bank or 5% per year simple interest, whichever Landlord chooses. Landlord cannot mix such money with any other funds of Landlord or pledge, mortgage, or make any other use of such money until the money is actually due to Landlord; or
B. Landlord must post a surety bond in the manner allowed by law. If Landlord posts the bond, Landlord shall pay Tenant 5% interest per year. At the end of the Lease, Landlord will pay Tenant, or credit against rent, the interest due to Tenant. No interest will be due Tenant if Tenant wrongfully terminates the Lease before the end of the Lease Term.
*619 VI. NOTICES. _[name] is Landlord’s Agent. All notices to Landlord and all Lease Payments must be sent to Landlord’s Agent at_[address], unless Landlord gives Tenant written notice of a change. Landlord’s Agent may perform inspections on behalf of Landlord. All notices to Landlord shall be given by certified mail, return receipt requested, or by hand delivery to Landlord or Landlord’s Agent. Any notice to Tenant shall be given by certified mail, return receipt requested, or delivered to Tenant at the Premises. If Tenant is absent from the Premises, a notice to Tenant may be given by leaving a copy of the notice at the Premises.
VII. USE OF PREMISES. Tenant shall use the Premises only for residential purposes. Tenant also shall obey, and require anyone on the Premises to obey, all laws and any restrictions that apply to the Premises. Landlord will give Tenant notice of any restrictions that apply to the Premises.
⅜ Occasional overnight guests are/are not (circle one) permitted. An occasional overnight guest is one who does not stay more than_nights in any calendar month.
* Landlord’s written approval is/is not (circle one) required to allow anyone else to occupy the Premises.
Tenant may/may not (circle one) keep or allow pets or animals on the Premises without Landlord’s approval of the pet or animal in writing.
Tenant shall not keep any dangerous or flammable items that might increase the danger of fire or damage on the Premises without Landlord’s consent.
Tenant shall not create any environmental hazards on or about the Premises.
Tenant shall not destroy, deface, damage, impair, or remove any part of the Premises belonging to Landlord, nor permit any person to do so.
⅜ Tenant may/may not (circle one) make any alterations or improvements to the Premises without first obtaining Landlord’s written consent to the alteration or improvement.
Tenant must act, and require all other persons on the Premises to act, in a manner that does not unreasonably disturb any neighbors or constitute a breach of the peace.
VIII. MAINTENANCE. Landlord and Tenant agree that the maintenance of the Premises must be performed by the person indicated below:
⅜ A. Structural and Building Codes. (Circle 1, 2, or 3 — this election must be made.)
1. Landlord shall have no maintenance responsibilities, including matters relating to building codes. Tenant assumes all risk for the condition of the Property, but Tenant has no obligation to repair.
2. Landlord/Tenant (circle one) will comply with applicable building, housing, and health codes relating to the Property.
3. If there are no applicable building, housing, or health codes, the person designated below agrees to maintain and repair the following items in a manner capable of resisting normal forces and loads. (Fill in each blank space with Landlord or Tenant to show who will take care of the items noted. If an item is left blank, Landlord will be responsible for the item.)
__Roofs
_Porches
__Windows
_Exterior walls
_ Screens
_Foundations
_Floors
_Structural components
_Steps
_Plumbing (kept in reasonable working order)
* The Landlord shall/shall not (circle one) be required to install working smoke detectors on the Premises.
B. Elective Maintenance. Fill in each blank space in this section with Landlord or Tenant to show who will take care of the item noted. If a space is left blank, Landlord will be required to take care of that item.
_Smoke detectors
_Extermination of rats, mice, roaches, ants, wood-destroying organisms, and
*620 _bedbugs
_Locks and keys
_Clean and safe condition of outside areas
_Garbage removal and outside garbage receptacles
_Running water
_Hot water
_Lawn
_Heat
_Air conditioning
_Furniture
_Appliances
_Fixtures
_Pool (including filters, machinery, and equipment)
_Heating and air conditioning filters
_Other:_
* Tenant’s responsibility, if any, indicated above, shall/shall not (circle one) include major maintenance or major replacement of equipment.
* Landlord’s responsibility, if any, indicated above, shall/shall not (circle one) include major maintenance or major replacement of equipment.
Major maintenance or major replacement means a repair or replacement that costs more than $_
Tenant shall be required to vacate the Premises on 7 days’ written notice, if necessary, for extermination pursuant to this subparagraph. When vacation of the Premises is required for extermination, Landlord shall not be liable for damages but shall abate the rent.
Nothing in this section makes Landlord responsible for any condition created or caused by the negligent or wrongful act or omission of Tenant, any member of Tenant’s family, or any other person on the Premises with Tenant’s consent.
C. Tenant’s Required Maintenance. At all times during the Lease Term, Tenant shall:
1. comply with all obligations imposed upon tenants by applicable provisions of building, housing, and health codes;
2. keep the Premises clean and sanitary;
3. remove all garbage from the dwelling unit in a clean and sanitary manner;
4. keep all plumbing fixtures in the dwelling unit clean, sanitary, and in repair; and
5. use and operate in a reasonable manner all electrical, plumbing, sanitary, heating, ventilating,air conditioning, and other facilities and appliances, including elevators.
IX. UTILITIES. Tenant shall pay all charges for hook-up, connection, and deposit for providing all utilities and utility services to the Premises during this lease except _, which Landlord agrees to provide at Landlord’s expense. (Specify any utilities to be provided and paid for by Landlord such as water, sewer, oil, gas, electricity, telephone, garbage removal, etc.).
X. LANDLORD’S ACCESS TO PREMISES. Landlord or Landlord’s Agent may enter the Premises in the following circumstances:
A. At any time for the protection or preservation of the Premises.
B. After reasonable notice to Tenant at reasonable times for the purpose of repairing the Premises.
C. To inspect the Premises; make necessary or agreed-upon repairs, decorations, alterations, or improvements; supply agreed services; or exhibit the Premises to prospective or actual purchasers, mortgagees, tenants, workers, or contractors under any of the following circumstances:
1. with Tenant’s consent;
2. in case of emergency;
3. when Tenant unreasonably withholds consent; or
4. if Tenant is absent from the Premises for a period of at least one-half a Rental Installment Period. (If the rent is current and Tenant notifies Landlord of an intended absence, then Landlord may enter only with Tenant’s consent or for the protection or preservation of the Premises.)
*621 XI. PROHIBITED ACTS BY LANDLORD.
A. Landlord cannot cause, directly or indirectly, the termination or unreasonable interruption of any utility service furnished to Tenant, including, but not limited to, water, heat, light, electricity, gas, elevator, garbage collection, or refrigeration (whether or not the utility service is under the control of, or payment is made by, Landlord).
B. Landlord cannot prevent Tenant’s access to the Premises by any means, including, but not limited to, changing the locks or using any bootloek or similar device.
C. Landlord cannot remove the outside doors, locks, roof, walls, or windows of the Premises except for purposes of maintenance, repair, or replacement. Landlord cannot remove Tenant’s personal property from the Premises unless the action is taken after surrender, abandonment, or a lawful eviction. If provided in a written agreement separate from the Lease, upon surrender or abandonment by Tenant, Landlord shall not be liable or responsible for storage or disposition of Tenant’s personal property. (For the purposes of this section, abandonment means Tenant is absent from the Premises for at least one-half a Rental Installment Period without paying rent or giving Landlord reasonable notice of Tenant’s absence.)
XII. CASUALTY DAMAGE. If the Premises are damaged or destroyed other than by wrongful or negligent acts of Tenant or persons on the Premises with Tenant’s consent, so that the use of the Premises is substantially impaired, Tenant may terminate the Lease within 30 days after the damage or destruction and Tenant will immediately vacate the premises. If Tenant vacates, Tenant is not liable for rent that would have been due after the date of termination. Tenant may vacate the part of the Premises rendered unusable by the damage or destruction, in which case Tenant’s liability for rent shall be reduced by the fair rental value of the part of the Premises that was damaged or destroyed.
XIII. DEFAULT.
A.Landlord’s Default. Except as noted below, Landlord will be in default if Landlord fails to comply with Landlord’s required maintenance obligations under Section VIII(A) or fails to comply with other material provisions of the Lease and such failure continues for more than 7 days after Tenant delivers a written notice to Landlord that tells Landlord how Landlord has violated the Lease.
If Landlord’s failure to comply is due to causes beyond the Landlord’s control and if Landlord has made, and continues to make, every reasonable effort to correct the problem, the Lease may be altered by the parties, as follows:
1. If Landlord’s failure to comply makes the Premises uninhabitable and Tenant vacates, Tenant shall not be liable for rent during the period the Premises remains uninhabitable.
2. If Landlord’s failure to comply does not make the Premises uninhabitable and Tenant continues to occupy the Premises, the rent for the period of noneompliance will be reduced by an amount in proportion to the loss of rental value caused by the noneompliance.
B. Tenant’s Default. Tenant will be in default if any of the following occur:
1. Tenant fails to pay rent when due and the default continues for 3 days, excluding Saturday, Sunday, and legal holidays, after delivery of written demand by Landlord for payment of the rent or possession of the Premises.
2. Tenant fails to perform its obligations under the Lease, and the failure is such that Tenant should not be given an opportunity to correct it or the failure occurs within 12 months of a written warning by Landlord of a similar failure. Examples of such failures which do not require an opportunity to correct include, but are not limited to, destruction, damage, or misuse of Landlord’s or other Tenant’s property by an intentional act or a subsequent or continued unreasonable disturbance.
3. Except as provided above, Tenant fails to perform any other obligation under the Lease and the default continues for more than 7 days after delivery of written notice to Tenant from Landlord specifying the default.
C. Waiver of Default. If Landlord accepts rent knowing of Tenant’s default or accepts performance by Tenant of any provision of the Lease different from the performance required by the Lease, or if Tenant pays rent knowing of Landlord’s default or accepts performance by Landlord of any provision of the Lease different from the performance required by the Lease, the party accepting the rent or performance or *622 making the payment shall not have the right to terminate the Lease or to bring a lawsuit for that default, but may enforce any later default.
XIV. REMEDIES AND DEFENSES.
A. Tenant’s Remedies.
1. If Landlord has defaulted under the Lease and if Tenant has given Landlord a written notice describing the default and Tenant’s intention to withhold rent if the default is not corrected within 7 days, Tenant may withhold an amount of rent equal to the loss in rental value caused by the default. If Tenant’s notice advises Landlord that Tenant intends to terminate the lease if the default is not cured within 7 days and the default is not cured within the 7 days, Tenant may terminate the Lease.
2. If Tenant has given the notice referred to in subparagraph (1) above, and if Landlord has not corrected the default within 7 days, Tenant may, in addition to withholding the applicable amount of rent, file a lawsuit in county court to require Landlord to correct the default and for damages.
3. If Landlord’s default makes the Premises uninhabitable, and if Tenant has given Landlord a notice describing the default and informing Landlord that Tenant intends to terminate the Lease, then if Landlord does not cure the default within the 7-day period, Tenant may terminate the Lease at the end of the 7 days.
4. If Landlord violates the provisions of section XI, Landlord shall be liable to Tenant for actual and consequential damages or 3 months’ rent, whichever is greater, for each violation.
B. Landlord’s Remedies.
1. If Tenant remains on the Premises after expiration or termination of the Lease without Landlord’s permission, Landlord may recover possession of the Premises in the manner provided for by law. Landlord also may recover double rent for the period during which Tenant refuses to vacate the Premises.
2. If Tenant defaults under the Lease by failing to pay rent, as set forth in section XIII(B)(1), Landlord may terminate Tenant’s rights under the Lease and Tenant shall vacate the Premises immediately. If Tenant defaults under the Lease for any other reason, as set forth in sections XIII(B)(2) or (3) above, Landlord may terminate Tenant’s rights under the Lease and Tenant shall vacate the Premises within 7 days of delivery of the notice of termination.
3. If Tenant fails to cure a default within the time specified in the notice to Tenant, Landlord may recover possession of the Premises as provided by law.
4. Landlord shall not recover possession of the Premises except:
a. in a lawsuit for possession;
b. when Tenant has surrendered possession of the Premises to Landlord; or
e. when Tenant has abandoned the Premises. Absent actual knowledge of abandonment, the Premises shall be considered abandoned if Tenant is absent from them for at least one-half a Rental Installment Period, the rent is not current, and Tenant has not notified Landlord, in writing, of an intended absence.
5. If Tenant has defaulted under the Lease and Landlord has obtained a writ of possession, if Tenant has surrendered possession of the Premises to Landlord, or if Tenant has abandoned the Premises, Landlord may:
a. treat the Lease as terminated, retake possession for Landlord’s own account, and any further liability of Tenant will be ended;
b. retake possession of the Premises for Tenant’s account. Tenant will remain liable for the difference between rent agreed to be paid under the Lease and rent Landlord is able to recover in good faith from a new tenant; or
c. do nothing, and Tenant will be liable for the rent as it comes due.
6. If Landlord retakes possession of the Premises for Tenant’s account, Landlord must make a good faith effort to re-lease the Premises. Any rent received by Landlord as a result of the new lease shall be deducted from the rent due from Tenant. For purposes of this section, “good faith” in trying to re-lease the Premises means that Landlord shall use at least the same efforts to re-lease the Premises as were used in the initial rental or at least the same efforts as Landlord uses in attempting to lease other similar property. It does not require Landlord to give a preference in leasing the Premises over other vacant properties that Landlord owns or has the responsibility to rent.
*623 C. Other Remedies. Each party also may have other remedies available at law or in equity.
D. Defenses. In a lawsuit by Landlord for possession of the Premises based upon nonpayment of rent or in a lawsuit by Landlord seeking to obtain unpaid rent, Tenant may assert as a defense Landlord’s failure to perform required maintenance, as set forth in Section VIII(A) above. Landlord’s failure to provide elective maintenance, as set forth in Section VIII(B) above, shall not be a defense to any lawsuit by Landlord for possession of the Premises unless otherwise provided by the Lease or applicable law. Tenant may also raise any other defense, whether legal or equitable, that Tenant may have, including the defense or retaliatory conduct.
E. Payment of Rent to Court. In any lawsuit by Landlord for possession of the Premises, if Tenant raises any defense other than payment, Tenant must pay into the registry of the court the past due rent set forth in Landlord’s complaint, or an amount determined by the court, and the rent which comes due during the lawsuit, as it comes due. Failure of Tenant to pay the rent into the registry of the court will be a waiver of Tenant’s defenses other than payment.
F. Attorney’s Fees. In any lawsuit brought to enforce the Lease or under applicable law, the party who wins may recover its reasonable court costs and attorneys’ fees from the party who loses.
XV. ASSIGNMENT AND SUBLEASING. Tenant may/may not (circle one) assign the Lease or sublease all or any part of the Premises without first obtaining Landlord’s written approval and consent to the assignment or sublease.
XVI. RISK OF LOSS. Landlord shall/shall not (circle one) be liable for any loss by reason of damage, theft, or otherwise to the contents, belongings and personal effects of the Tenant, or Tenant’s family, agents, employees, guests, or visitors located in or about the Premises, or for damage or injury to Tenant or Tenant’s family, agents, employees, guests or visitors. Landlord shall not be liable if such damage, theft, or loss is caused by Tenant, Tenant’s family, agents, employees, guests, or visitors.
Nothing contained in this provision shall relieve Landlord or Tenant from responsibility for loss, damage, or injury caused by its own negligence or willful conduct.
XVII. SUBORDINATION. The Lease is subordinate to the lien of any mortgage encumbering the fee title to the Premises from time to time.
XVIII. LIENS. Tenant shall not have the right or authority to encumber the Premises or to permit any person to claim or assert any lien for the improvement or repair of the Premises made by Tenant. Tenant shall notify all parties performing work on the Premises at Tenant’s request that the Lease does not allow any liens to attach to Landlord’s interest.
XIX. APPROVAL CONTINGENCY. The Lease is/is not (circle one) conditioned upon approval of Tenant by the association that governs the Premises.
XX. RENEWAL/EXTENSION. The Lease can be renewed or extended only by a written agreement signed by both Landlord and Tenant, but no renewal may extend the term to a date more than 1 year after the lease begins. A new lease is required for each year.
XXI. MISCELLANEOUS.
A. Time is of the essence of the Lease.
B. The Lease shall be binding upon and for the benefit of the heirs, personal representatives, successors, and permitted assigns of Landlord and Tenant, subject to the requirements specifically mentioned in the Lease. Whenever used, the singular number shall include the plural or singular and the use of any gender shall include all appropriate genders.
C. The agreements contained in the Lease set forth the complete understanding of the parties and may not be changed or terminated orally.
D. No agreement to accept surrender of the Premises from Tenant will be valid unless in writing and signed by Landlord.
*624 E. All questions concerning the meaning, execution, construction, effect, validity, and enforcement of the Lease shall be determined pursuant to the laws of Florida.
F. The place for filing any suits or other proceedings with respect to the Lease shall be the county in which the Premises is located.
G. Landlord and Tenant will use good faith in performing their obligations under the Lease.
H. As required by law, Landlord makes the following disclosure:
“RADON GAS.” Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your county public health unit.
The Lease has been executed by the parties on the dates indicated below:
Executed by Landlord in the presence of:
[[Image here]]